# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4543

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Yepez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: December 11, 2017
Filed: March 2, 2018
[Unpublished]

_____

Before SMITH, Chief Judge, ARNOLD and KELLY, Circuit Judges.

_____

PER CURIAM.

Jose Yepez pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine and one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 ("Count 1"); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (ii), and (h) ("Count 2"). The

district court[1] denied Yepez's requested safety-valve relief, concluding that Yepez failed to "truthfully provide[] to the Government all information and evidence [he] ha[d] concerning the . . . offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); *see also* U.S.S.G. § 5C1.2(a)(5). As a result, the district court sentenced Yepez to 120 months' imprisonment, the statutory minimum. Yepez appeals the denial of safety-valve relief. We affirm.

## I. *Background*

Yepez pleaded guilty to Counts 1 and 2. Count 1 charged Yepez and ten codefendants with conspiracy to distribute 500 grams or more of methamphetamine and one kilogram or more of heroin. The statutory minimum for Count 1 was 120 months' imprisonment. Count 2 charged Yepez and 13 codefendants with conspiracy to conceal the drug sale proceeds from the drug-trafficking offenses charged in Count 1.

The unobjected-to facts in the presentence investigation report (PSR) revealed that Yepez was a mid-level supplier and distributor. His brother, Mario Yepez, was the primary source for heroin and methamphetamine beginning in January 2011 to January 27, 2015. Yepez's specific conduct associated with the conspiracy occurred between June 2013 and February 2015. The PSR attributed 3,222.55 grams of methamphetamine and 273.85 grams of heroin to Yepez. Much of the factual information in the PSR was derived from a confidential informant's (CI) statement.

The PSR initially determined that Yepez had a total offense level of 31 and a criminal history category of I. Yepez objected to, among other things, the total offense level, arguing that he qualified for the safety valve because "he ha[d] provided a full statement of his involvement at the time of the guilty plea and

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

otherwise qualifies for Safety Valve." PSR at 23, *United States v. Yepez,* No. 5:15-cr-06002-HFS-4 (W.D. Mo. Nov. 4, 2016), ECF No. 231.

Yepez had first provided the government with a typed and signed statement of his involvement. Then, on the morning of sentencing, Yepez provided a handwritten statement to the government and the court.[2]

Before sentencing commenced, counsel, the probation officer, and the district court met in the jury room to discuss whether Yepez "want[ed] to be more specific in disclosures." Sentencing Transcript at 2, *United States v. Yepez*, No. 5:15-cr-06002-HFS-4 (W.D. Mo. Jan. 6, 2017), ECF No. 272. Defense counsel acknowledged that Yepez's handwritten statement was "pretty specific about a couple of the incidents" but "not pretty specific about every incident involved in this" case. *Id.* The government responded that it would give Yepez the opportunity to be more specific as to the whole conspiracy. But defense counsel replied, "He's indicated to me that he doesn't remember anything other than what he's written down." *Id.* at 4. The court then suggested that another factor was potentially influencing Yepez's motivation not to provide additional information—Yepez's "reluctan[ce] to talk about family members." *Id.* While Yepez had not "directly expressed this" sentiment to defense counsel, counsel agreed with the district court, stating, "I feel like he is very reluctant to talk about family. I can ask him again, but I sort of feel like his answer is not going to change much from the 'I don't remember anything other than what I've already provided you.'" *Id.* at 5.

After a short break in which the court reviewed Yepez's statements, the sentencing commenced. Yepez did not ask for a delay in sentencing to provide additional information. Defense counsel continued to ask for the safety valve,

---

[2]We granted Yepez's motion to file under seal the addendum containing these statements.

recognizing that Yepez had "provided two statements, one [of which] is pretty general and vague." *Id.* at 8. Defense counsel asked the court to consider the two statements together as a "full statement of [Yepez's] . . . participation in the crimes." *Id.* at 9.

The district court concluded that Yepez failed to satisfy the disclosure element of safety-valve qualification, noting that the defendant failed "to deal with the full range of information that the government had from confidential informants," *id.* at 10, did not fully acknowledge his involvement with methamphetamine activities, and did not "recit[e] on his own as much as he remembers with the assistance of the information that's been provided in the presentence report," *id.* at 11.

The district court sentenced Yepez to the statutory minimum of 120 months' imprisonment on each count to be served concurrently.

## II. *Discussion*

On appeal, Yepez argues that the district court clearly erred in denying him safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a). *See United States v. Delgrosso*, 852 F.3d 821, 829 (8th Cir. 2017). Specifically, he contends that the district court clearly erred in its "findings regarding the completeness and truthfulness of information" that he provided to the government. *Id.* (citation omitted).

Section 3553(f) and § 5C1.2(a) "allow a district court to impose a sentence below the statutory minimum sentence if the defendant satisfies each of five requirements." *Id.* (citation omitted). The only issue here is "whether [Yepez] satisfied the fifth requirement: 'not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses.'" *Id.* (quoting 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5)). We have explained that "a defendant must do more than disclose the basic facts of his crime" to obtain safety-valve relief. *United*

*States v. Guerra–Cabrera*, 477 F.3d 1021, 1025 (8th Cir. 2007) (citation omitted). "He must disclose whatever information he has about his offense, and the district court can hold him accountable for revealing the identities and participation of others involved in the offense if it could reasonably be expected he would have such information." *Id.* (citation omitted).

Here, the district court found that Yepez did not satisfy this requirement because Yepez did no "more than disclose the basic facts of his crime." *Id.* Yepez provided two statements to the government. Defense counsel admitted that one of those statements was "pretty general and vague." Sentencing Transcript at 8. As to the second statement, defense counsel admitted that it was "only pretty specific about a couple of the incidents. It's not pretty specific about every incident involved in this" case. *Id.* at 2. This concession matches the district court's observation that Yepez's statements did not "deal with the full range of information that the government had from confidential informants and others." *Id.* at 10. Defense counsel also agreed with the district court that Yepez's motivation not to provide further information was likely influenced by his reluctance to speak about family members. Defense counsel stated, "I feel like he is very reluctant to talk about family. I can ask him again, but I sort of feel like his answer is not going to change much from the 'I don't remember anything other than what I've already provided you.'" *Id.* at 5.

Having reviewed the record, we find no clear error in the district court's denial of safety-valve relief to Yepez.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____